IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| TIM ELKINS, an individual,<br><br>        Plaintiff,<br><br>v.<br><br>POWERSPORTS PIT STOP LLC, a Utah Limited Liability Corporation, and PERRY K. STATES, an individual,<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 1:21-cv-00030 JNP<br><br>Judge Jill N. Parrish |

Before the court is Plaintiff Tim Elkins' Motion for Summary Judgment (ECF No. 30). For the reasons set forth below, the court DENIES Plaintiff's Motion.[1]

## FACTUAL BACKGROUND

Defendant Perry K. States is the owner of Defendant Powersports Pit Stop, LLC, a mechanic shop whose specialty is repairing motorcycles and other all-terrain vehicles. Plaintiff is a trained mechanic who worked for Defendants from approximately July 2017 through September 2020. Defendants paid Plaintiff on a commission basis rather than by an hourly wage. Defendants determined the rate of Plaintiff's commission. Plaintiff lived in Defendants' garage during the course of his employment.

Both parties agree that Defendants "exercised full control over what repair services would, or would not, be provided to customers of Defendant Powersports Pit Stop." ECF No. 33 at 4-5.

---

[1] The court had previously scheduled a hearing on this motion. But after reviewing the briefs, the court concluded that oral argument would not assist the court. The court strikes the hearing.

1

The parties disagree, however, over whether Defendants exercised "full control" over Plaintiff and his work. *Id*. at 5-6. Specifically, Plaintiff argues that Defendants controlled all aspects of the work environment such that Plaintiff qualifies as an employee under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. Conversely, Defendants argue that Plaintiff was an independent contractor and therefore not subject to the FLSA's protections.

To support his position, Plaintiff points to deposition testimony wherein Defendant States concedes that he set the hours the shop was open, the price of services, and the commission percentages paid to all mechanics. ECF No. 30 at 2-19. States also testified that he was responsible for all business advertising and bringing customers into the shop. *Id*. Defendants did not have a policy of worker's compensation insurance, tax documents or any ledgers showing the hours Plaintiff worked. *Id*. Finally, Defendant States stated that "anybody that does work at the company," including Plaintiff, was an "employee." *Id*. at 14. Based on this evidence, Plaintiff argues that Defendants hired him as an employee. Plaintiff asserts that no reasonable fact finder could find that Plaintiff was anything but an employee and therefore, summary judgment is proper.

Defendants, by contrast, argue that Plaintiff at all times desired to be treated as an independent contractor and that Defendants ceded to his request. Defendants assert that Plaintiff used his own tools, selected his own work schedule, including, working through the night, and occasionally brought his own customers into the shop, charging them apart from Defendants' business. ECF No. 33 at 35-38. Defendants also allege that they tracked the jobs that Plaintiff had completed, rather than the hours that Plaintiff had worked, as is typical of an independent contractor. *Id*. Defendants further aver that had Plaintiff been an employee, he would have been fired due to his erratic work hours. However, because he was "more independent," Defendants allowed him to continue working as he dictated. *Id*. These facts, Defendants assert, demonstrate

that Plaintiff was at all times an independent contractor, or, at the very least, call into question Plaintiff's employment status.

In September 2020, Plaintiff stopped performing services for Defendants. On March 4, 2021, Plaintiff filed this lawsuit against Defendants, alleging that Defendants' failure to both pay overtime wages, and maintain accurate, contemporaneous, and detailed records of the hours that Plaintiff had worked violated the FLSA. ECF No. 2. Plaintiff now moves for summary judgment, ECF No. 30, arguing that there are no disputed facts surrounding Plaintiff's status as an employee under the FLSA.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). When applying the summary judgment standard, the court must "view the evidence and make all reasonable inferences in the light most favorable to the nonmoving party." *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008). In essence, the inquiry for the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252.

# ANALYSIS

The central question in this case is whether the Plaintiff, while working for Defendants, was an "employee" or an "independent contractor" for purposes of the FLSA, which provides overtime protections for covered employees. The FLSA is broadly construed. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (noting that the FLSA defines the verb "employ" expansively and "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles."). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," § 203(d), and an "employee" as any individual employed by an employer. § 203(e). "Employ" is defined to include "to suffer or permit to work." § 203(g).

The Tenth Circuit applies an "economic realities" test to determine whether an individual is an employee or an independent contractor under the FLSA. *Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1235 (10th Cir. 2018). The test "seeks to look past technical, common-law concepts of the master and servant relationship to determine whether, as a matter of economic reality, a worker is dependent on a given employer." *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 506 (10th Cir. 2012). The economic realities test evaluates "whether the individual is *economically dependent* on the business to which he renders service, or is, as a matter of economic fact, in business for himself." *Id*. (quoting *Doty v. Elias*, 733 F.2d 720, 722-23 (10th Cir. 1984) (emphasis in original).

In applying the economic reality test to "employees" within the FLSA, the analysis ordinarily turns on six factors:

    (1) the degree of control exerted by the alleged employer over the worker;
    (2) the worker's opportunity for profit or loss;
    (3) the worker's investment in the business;
    (4) the permanence of the working relationship;

> (5) the degree of skill required to perform the work; and
> (6) the extent to which the work is an integral part of the alleged employer's business.

*Paragon*, 884 F.3d at 1235. No one factor alone is dispositive; instead, the court must employ a totality of the circumstances approach. *Id*.

Under the FLSA, "the question of whether a worker is an independent contractor or an employee is a question of law." *Herr v. Heiman*, 75 F.3d 1509, 1513 (10th Cir. 1996). Nevertheless, the "existence and degree of each factor is a question of fact." *Id*. (quoting *Dole v. Snell*, 875 F.2d 802, 805 (10th Cir. 1989)). Courts have repeatedly denied summary judgment motions where there were genuine disputed facts material to the classification of workers as independent contractors or employees. *See, e.g.*, *Herr*, 75 F.3d at 1513; *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 571 (10th Cir. 1994); *Merrill v. Pathway Leasing LLC*, No. 16-CV-02242-KLM, 2018 WL 2214471, at *12 (D. Colo. May 14, 2018); *Renteria-Camacho v. DIRECTV, INC.*, No. 14-2529, 2017 WL 4619354, at *3 (D. Kan. Oct. 16, 2017). Accordingly, if there are disputed issues of fact within the six factors of the economic realities test, then the court must deny summary judgment. The court thus evaluates each factor in turn.

<u>Degree of Control</u>

The first factor under the economic realities test is the degree of control an employer has over an individual. A worker's ability to act autonomously or with some degree of independence tends to show that he or she is an independent contractor. *See Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1441 (10th Cir. 1998). To assess the degree of control, the trier of fact must consider the plaintiff's independence in setting his work schedule and other work conditions, the extent of the defendant's supervision, and the plaintiff's ability to work for other employers. *See Paragon*, 884 F.3d at 1235.

Here, the parties strongly disagree on the extent of Defendants' control over Plaintiff. Both sides marshal Defendant States' deposition testimony for their respective positions. Plaintiff contends that Defendants set Plaintiff's work hours and supplied him with customers, tools and advertising. Importantly, Defendants even used the term "employee" in referring to Plaintiff. In contrast, Defendants point out that in the same deposition, Defendant States testified that Plaintiff picked his own work hours, used his own tools and, on several occasions, performed work for customers he individually brought into the shop, charging them separately for the work he performed.

Based on these assertions alone, and construing the evidence in the light most favorable to Defendants, the court concludes that genuine disputes of material fact exist as to the degree of control Defendants exercised over Plaintiff. The record is not so "one-sided" as to mandate that Plaintiff prevail as a matter of law.

## Opportunity for Profit and Loss

The second factor under the economic realities test is the worker's ability to earn a profit or suffer a loss based on his performance. Independent contractors typically assume the risk of earning a profit or suffering a loss based on performance while employees are paid regardless of performance. *Paragon*, 884 F.3d at 1236.

Here, Plaintiff argues that he was not an independent contractor because he was paid a set amount per job and his income was almost exclusively generated from Defendants' business. In other words, Plaintiff's "earnings did not depend upon [his] judgment or initiative, but on [Defendants'] need for [his] work." *Dole*, 875 F.2d at 810. Defendants argue that because Plaintiff serviced his own customers, he had the opportunity to independently profit.

Construing the facts in the light most favorable to Defendants, the court cannot conclusively say that Plaintiff's opportunity to increase profits was so *de minimis* that he was merely an employee. Simply put, material issues of fact remain concerning this factor.

### Plaintiff's Investment in the Business

The third factor of the economic realities test is the plaintiff's investment in the business, which compares the investments of the worker versus that of the alleged employer. "Investment" refers to "the amount of large capital expenditures, such as risk capital and capital investments, not negligible items, or labor itself." *Id*. The more substantial the investment, the greater the likelihood that the worker was an independent contractor.

The only evidence that Defendants present that Plaintiff invested in the business is that Plaintiff supplied his own tools. But "[c]ourts have generally held that the fact that a worker supplies his or her own tools or equipment does not preclude a finding of employee status." *Id*. As this is the extent of evidence and argument regarding Plaintiff's investment in the business, the court concludes that this factor weighs in Plaintiff's favor.

### Permanence of the Working Relationship

The fourth factor is the permanence of the working relationship. The Tenth Circuit has noted that independent contractors generally have fixed employment periods and transfer from place to place as work becomes available, while employees work for one employer and their relationship is continuous and for an indefinite duration. *Id*. at 811.

Plaintiff argues that because he worked for defendants for a continuous and indefinite duration, and left on his own volition after several years of work, he should be classified as an employee. Conversely, Defendants argue that because Plaintiff worked on vehicles on a project-by-project basis rather than for a flat hourly rate, chose his own projects, determined the amount

of time and days he worked, and did not need to communicate his schedule with Defendants, he was an independent contractor. Viewing the facts in the light most favorable to the nonmoving party, the court finds that genuine disputes of material fact remain as to the fourth factor of the economic realities test.

### Degree of Skill

The economic realities test also requires the court to examine an individual's degree of skill: a worker is more likely to be considered an employee if his job does not require "specialized skills." *Id*. While "the lack of the requirement of specialized skills is indicative of employee status, the use of special skills is not itself indicative of independent contractor status, especially if the workers do not use those skills in any independent way." *Baker*, 137 F.3d at 1443 (citation omitted). In *Baker*, the Tenth Circuit noted that even highly skilled workers were not independent contractors if they did not use those skills in any independent fashion. *Id*.

Here, it is undisputed that Plaintiff had specialized skills as a mechanic. Defendant States testified that Plaintiff knew how to repair the motorcycles and other all-terrain vehicles and if he did not, Plaintiff and Defendant States would teach each other how to repair the vehicles. ECF No. 33 at 7-8. Defendants further argue that Plaintiff used this skill independently when he serviced his own customers at Defendants' shop, and charged them separately for his work. Construing the evidence in the light most favorable to Defendants, the court finds that a trier of fact could reasonably determine that based on his independent, specialized skill, Plaintiff could have been an independent contractor.

### Integral Part of the Defendants' Business

The final factor in the economic realities test concerns whether Plaintiff's services were an integral part of Defendants' business. *See Baker*, 137 F.3d at 1443. An individual is more likely to

8

be classified as an employee rather than as an independent contractor if his services are central to a business. Here, Defendants are in the business of fixing motorcycles and all-terrain vehicles. Plaintiff was the mechanic who serviced those vehicles. It is difficult to imagine a more integral type of work that Plaintiff could perform for Defendants. Accordingly, this factor supports classifying Plaintiff as an employee.

* * *

For all the reasons discussed above, and viewing the evidence in the light most favorable to Defendants, the court finds that material issues of fact remain regarding the economic realities of Plaintiff's working relationship with Defendants. The intensive fact-finding necessary to determine whether plaintiff was an independent contractor or employee should be left to the trier of fact. *See Herr*, 75 F.3d at 1513 (holding that fact issues precluded summary judgment as to determination of employee status under the FLSA); *Henderson*, 41 F.3d at 570 (same). Summary judgment is therefore not appropriate on Plaintiff's employee or independent contractor status.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED.

DATED this 20th day of March, 2023.

_____
Jill N. Parrish
United States District Court Judge